```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                          Chapter 13

JOSEPH LEPAGE,                                                  Case No. 8-10-74093-reg
                                    Debtor.
-----------------------------------------------------------x

JOSEPH LEPAGE.,                                                 Adv. Proc. No. 8-10-08287-reg
                                    Plaintiff,

        v.

BANK OF AMERICA
                                    Defendant.
-----------------------------------------------------------x
```

## MEMORANDUM DECISION

Before the Court is an adversary proceeding commenced by Joseph Lepage (the "Debtor") to avoid a second mortgage lien on his residence pursuant to 11 U.S.C. §§ 506(a) and (d) and § 1322(b)(2). This lien is held by Bank of America (the "Defendant"). The Defendant objects to the requested relief and argues that the Debtor has used a below market estimate of value for the residence. The issue before the Court is whether the value of the subject property is greater or less than $181,149.80, the amount of the allowed secured claim filed by the first mortgagee. Based on the record, the Court finds that the value of the property is $175,000, which is less than the first lien, and therefore grants the relief requested by the Debtor.

*Procedural Posture*

The Debtor filed the instant adversary proceeding on June 30, 2010 and the clerk's office issued a summons and notice of the complaint (the "Complaint") on July 1, 2010. Defendant filed an answer on August 2, 2010. Pretrial conferences were held on August, 9, 2010 and December 13, 2010. The Court entered an initial pretrial order on September 8, 2010 and a final

pretrial order on December 20, 2010. On February 1 through February 9, 2010, both parties filed a statement pursuant to Federal Rule of Civil Procedure 26 *et seq.* and the parties filed a joint pretrial statement. A trial consisting of an evidentiary hearing on valuation was held on February 10, 2010.

*Facts*

On May 28, 2010, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (the "Code"). On Schedule A, the Debtor listed property located in Brentwood, New York (the "Property"), with a stated value of $180,000.00. The Property is encumbered by two secured claims totaling approximately $255,384.00. On Schedule D the Debtor lists a first lien of $182,475.00 held by CitiMortgage Inc. Neither party disputes that the value of the first lien is $181,149.80, the amount of the proof of claim filed by the first mortgagee. The second lien is listed on Schedule D in the amount of $72,909.00 and is held by the Defendant.

In the Complaint the Debtor alleges that the Property is valued at approximately $175,000.00. The Debtor seeks to have the second mortgage lien declared unsecured and avoided pursuant to sections 506(a) and (d) of the Code.

The parties agree that "[t]he sole issue of fact to be litigated at the time of trial is the value of the [Property] at or about the date of filing." It was also agreed that if the Court made a finding that the Property was worth $181,149.80 or less, the relief requested by the Debtor in the Complaint would be granted.

Each party retained an expert to value the Property. The Debtor's expert, John Breslin, has been an active appraiser since 1980 and has been licensed for fifteen years. (Trial Testimony

on Feb. 10, 2010). He has testified extensively in Federal and state courts. (Plff. Exh. 3, at 31). He holds a Juris Doctorate degree from St. John's University. (Plff. Exh. 3, at 31). According to Mr. Breslin the Property had a value of $175,000.00 as of June 1, 2010, the date of his appraisal. (Plff. Exh. 3, at 1). The Defendant's appraiser, Stephen C. Meyer, has been an appraiser since 2003, and has been licensed since 2007. (Trial Testimony). He admitted he has never before testified as an expert in any court. (Trial Testimony). Mr. Meyer values the property at $205,000.00 as of June 28, 2010. (Plff. Exh. 4, at 1).

Mr. Breslin describes the Property as a 900 square foot five-room ranch containing three bedrooms, one bath, a finished basement, a patio and no garage. (Plff. Exh. 3, at 9-10). He describes the Property as being maintained in average condition. (Plff. Exh. 3, at 10).

Mr. Breslin testified that he employed the direct sales comparison method of valuation in determining the value of the Property. (Trial Testimony; Plff. Exh. 3, at 11). This method, he explained, included an inspection of the Property and a review of a Multiple Listing Services ("MLS") report for sales comparisons. (Trial Testimony; Plff. Exh. 3, at 11). In reaching his conclusions as to value, Mr. Breslin took into consideration a number of factors and then adjusted the comparable sales to the Property. (Trial Testimony; Plff. Exh. 3, at 11).

Mr. Breslin's calculations included a downward "time adjustment" of two percent per month to account for the decline in sales prices. (Trial Testimony; Plff. Exh. 3, at 12). He testified that the Long Island residential real estate market has been in decline since 2007, and Brentwood has experienced a steeper than average decline in home prices. (Trial Testimony; Plff. Exh. 3, at 12). He estimated this decline to be approximately twenty-five percent per year. (Trial Testimony; Plff. Exh. 3, at 12). Mr. Breslin described the area surrounding the Property as

one where many properties have been foreclosed and are now the property of the foreclosing bank. (Trial Testimony). These properties are commonly known as real estate owned ("REO"). (Trial Testimony). Both appraisers agreed that the effect of REO sales is to depress all sales of homes in the area. (Trial Testimony).

Sales comparison number one sold for $207,500.00 on April 20, 2010. (Plff. Exh. 3, at 13-14). However, the final adjusted price as estimated by Mr. Breslin was $181,272.00. (Plff. Exh. 3, at 13-14).

Sales comparison number two is a REO property, which sold for $121,000.00 on April 1, 2010. (Plff. Exh. 3, at 13-15). Mr. Breslin testified the final adjusted price for this property was $171,916.00. (Plff. Exh. 3, at 13-15).

The third sales comparison property sold for $195,000.00 on June 26, 2009. (Plff. Exh. 3, at 13-16). Mr. Breslin testified the final adjusted price should be $171,600.00. (Plff. Exh. 3, at 13-16).

The fourth sales comparison property sold for $159,000.00 on March 22, 2010. (Plff. Exh. 3, at 13-17). Mr Breslin arrived at a final adjusted price of $168,110.00. (Plff. Exh. 3, at 13-17).

Mr. Breslin testified he did not believe that there would be any difference between an appraisal on the date of filing, May, 28, 2010, and the actual appraisal date, June 1, 2010. (Trial Testimony). Mr. Breslin also stated that, based on his expert analysis, the Property had a value of $175,000.00. (Trial Testimony; Plff. Exh. 3, at 1).

Mr. Meyer testified that his appraisal date was as of July 28, 2010 and was based on a sales comparison approach as well. (Trial Testimony; Plff. Exh. 4, at 1). Mr. Meyer testified

that the factors he considered when conducting his analysis included the condition of the properties and whether the house was functional and livable. (Trial Testimony; Plff. Exh. 4, at 10). Mr. Meyer testified that he used an annual downward time adjustment of six percent to account for the decline in the market. (Trial Testimony; Plff. Exh. 4, at 9).

Mr. Meyer's first sales comparison was the same property used by Mr. Breslin for his first sales comparison.[1] (Plff. Exh. 3, at 13-14; Plff. Exh. 4, at 3,14). Mr. Meyer's appraisal reported a final adjusted price for this property of $203,000.00, while Mr. Breslin reported a final adjusted price of $181,272. (Plff. Exh. 4, at 3). Mr. Meyer testified that his calculation was based on an assumption that the property did not have a garage. (Trial Testimony). Upon cross-examination, Mr. Meyer admitted that he had no personal knowledge of whether in fact there was a garage. (Trial Testimony). Thus, at trial, Mr. Meyer admitted that he should have made an adjustment for the garage, and an amended analysis would include a downward adjustment for the garage, reducing the final adjusted price to $193,000.00. (Trial Testimony).[2]

In addition to the appraisers' variant approaches to the garage adjustment, Mr. Breslin explained that additional factors contributing to the difference between the appraisers' final adjusted price were their time adjustments and lot size adjustments. (Trial Testimony). Mr. Meyer used a time adjustment of six percent per year, whereas Mr. Breslin used a time adjustment of twenty-four percent per year. (Trial Testimony). Mr. Meyer's lot size adjustment amounted to a downward adjustment of 2.4%, whereas Mr. Breslin used a downward adjustment of seven percent. (Trial Testimony; Plff. Exh. 3, at 13-14; Plff. Exh. 4, at 3).

---

[1] This is the only property the appraisers' analyses have in common.

[2] Mr. Breslin's appraisal included a downward adjustment of two percent for the garage.

Mr. Meyer's second sales comparison sold for $245,920.00, which he adjusted down to $244,920.00. (Plff. Exh. 4, at 3). In rebuttal, Mr. Breslin testified that this property was an anomaly in the area because the surrounding properties of similar size were marketed for around $165,000.00. (Trial Testimony). He also testified that the sale price likely included a seller's concession which inflated the price above the asking price. (Trial Testimony). Mr. Breslin would not have made a substantial adjustment for taxes on this property. He also testified that if he had included this sale in his analysis, he would have made a five to ten percent downward adjustment for renovations, including updated windows and updated appliances. (Trial Testimony; Plff. Exh. 7).

Mr. Breslin for the most part agreed with Mr. Meyer's valuation of the third sales comparison property of $180,500.00. (Trial Testimony).

Mr. Breslin testified that Mr. Meyer's fourth, fifth and sixth sales comparison properties were completely different from the Debtor's house. (Trial Testimony). He also stated that the prices used by Mr. Meyer for these properties were listings, not sales. (Trial Testimony; Plff. Exh. 4, at 8). According to Mr. Breslin, the listing price of a property is not an accurate indicator of the property's value. (Trial Testimony). Mr. Meyer admitted that his employer required the use of three listings and three sales in his analysis. (Trial Testimony).

Mr. Meyer arrived at a final adjusted sales price of $224,500 on the fourth sales comparison property. (Plff. Exh. 4, at 8). Mr. Breslin prepared an MLS report on Mr. Meyer's sales comparison number four. (Plff. Exh. 5 and 6). Mr. Breslin testified that after adjusting for a seller's concession of six percent and a substantial condition adjustment of twenty percent, due to renovations on the home, his final adjusted sales price would have been about $175,200.00.

6

(Trial Testimony).

Mr. Breslin testified that the remaining properties were inappropriate for comparative purposes because both had additional rooms and were approximately two hundred square feet larger than the Property. (Trial Testimony; Plff. Exh. 4, at 8).

Mr. Meyer testified that because of the methodology he was required to employ in preparing his analysis, he was prevented from calculating the effect of REOs in the neighborhood and that this constraint made his report less accurate than an analysis would have been without such a constraint. (Trial Testimony).

*Discussion*

A chapter 13 debtor may seek to avoid a mortgage lien on his or her residence if that lien is determined to be wholly unsecured pursuant to 506(a) and (d) and 1322(b)(2). *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir. 2001). Section 506(a) of the Code is the correct starting point for a judicial determination of value of the creditor's secured claim. *Id*. (506(a) "provides that a claim is secured only to the extent of the *value of the property* on which the lien is fixed.") (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (emphasis added); *see also Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997) (quotation omitted)); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993).

Courts have consistently held that valuation of assets is "not an exact science". *In re Karakas*, No. 06–32961, No. 06–80245, 2007 WL 1307906, at * 6 (Bankr. N.D.N.Y. May 3, 2007); *see Boyce v. Soundview Tech. Grp.*, 464 F.3d 376, 387 (2d Cir. 2006). It requires consideration of the purpose of the valuation, *In re Rash*, 520 U.S. at 961-62, and all the factual

elements of a particular case. *Boyce v. Soundview Tech. Grp.*, 464 F.3d at 387 (citing cases). Valuation "is necessarily an approximation." *Id.* (quoting *Silverman v. Comm'r*, 538 F.2d 927, 933 (2d Cir.1976)). The Court may look to the accuracy, credibility and methodology employed by the appraisers. *See In re YL 87th Holdings I LLC*, 423 B.R. 421, 428-35 (Bankr. S.D.N.Y. 2010) (determining valuation to establish debtor's equity in a motion to vacate stay in a Chapter 11 case); *In re Carmania Corp N.V.*, 156 B.R. 119, 121 (Bankr. S.D.N.Y. 1993). However, "[a] court is not bound by values determined by appraisals [and] may form its own opinion as to the value of the subject property . . . ." *In re Karakas*, 2007 WL 1307906, at * 5 (quoting *In re Richards*, No. 97–14798DWS, 1999 WL 14680, at *7 (Bankr. E.D. Pa. Jan. 12, 1999)).

The burden is on the Debtor as the moving party to demonstrate that "there is not even one dollar of value" in the Property to support the lien which the Debtor seeks to avoid. *In re Karakas*, 2007 WL 1307906, at * 6 (citing *In re Fisher*, 289 B.R. 544, 547 (Bankr. W.D.N.Y. 2003)); *see In re Dziendziel*, 295 B.R. 184, 188 (Bankr. W.D.N.Y. 2003). Once the Debtor's burden has been met, the Defendant must submit sufficient evidence to overcome the Debtor's valuation. *In re Karakas*, 2007 WL 1307906, at * 7.

The Comparable Sales approach is commonly accepted as evidence of market value and has been described as follows:

> Under the comparable sales approach the appraiser researches the debtor's market place to find several recent sales of similar properties. Since every piece of property is unique, the appraiser then adjusts the actual sales prices of the comparables to account for both positive and negative differences between the comparables and the subject property. This process generates a range of adjusted sales and prices, within which the appraiser places the debtor's property in an attempt to ascertain what the debtor's property would actually sell for in its own market.

*In re Maple*, 07-10820, 2008 WL 3539793, at * 2 (Bankr. D. Vt. Aug. 8, 2008) (citing *In re SM*

*104 Ltd.*, 160 B.R. 202, 212 (Bankr. S.D.Fla.1993)); *see United States v. Trout*, 386 F.2d 216, 223 (5th Cir. 1967) ("[T]he courts have said repeatedly that comparable sales - sales from a willing seller to a willing buyer of similar property in the vicinity at or about the same time - constitute the best evidence of market value.") (compiling circuit court cases)); *United States v. 33.90 Acres of Land*, 709 F.2d 1012, 1014 (5th Cir. 1983).

This Court adopts Mr. Breslin's valuation of the Property in the amount of $175,000. Mr. Breslin's methodology was consistent with industry standards and his testimony was credible. Mr. Breslin accurately described the comparable sales methodology and his selection of sales comparison properties comport with the usual practice of excluding current listings. In contrast, Mr. Meyer's methodology was flawed and his testimony was less credible than Mr. Breslin's. Mr. Meyer included three asking prices and only three actual sales in his analysis, as required by his employer.

This Court also finds Mr. Breslin's portrayal of the economic conditions for Brentwood more credible than Mr. Meyer's representation of the economic conditions of the surrounding area. Mr. Meyer admitted that his omission of an REO sale in his calculations, as required by his employer, rendered his estimate of valuation of the Property less accurate.

This Court finds that exclusion of REO sales and inclusion of listing prices in the sales comparison methodology for the Property in Brentwood renders the appraisal by Mr. Meyer inaccurate. Thus, this Court finds Mr. Breslin's testimony and estimate of value to be far more credible than that of Mr. Meyer and finds that the value of the Property is $175,000.

Based on the entire record, the Court finds that the Debtor has met its burden, and the Defendant has not submitted sufficient evidence to overcome the Debtor's valuation of the

Property.  The Court shall enter a judgment consistent with this Memorandum Decision.


Dated: Central Islip, New York                 By**:**     **_/s/ Robert E. Grossman_**
      May 18, 2011                                      Robert E. Grossman
                                                      United States Bankruptcy Judge